### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

TAJ AHMEEL JOHNSON,
*Plaintiff*,

v.

JOHN DOE, *et al.*,
*Defendants.*

No. 3:25-cv-00030 (VAB)

### INITIAL REVIEW ORDER

Taj Johnson ("Plaintiff"), a sentenced inmate, has filed a *pro se* Complaint under 42 U.S.C. § 1983, naming eight Doe defendants at MacDougall-Walker Correctional Institution ("MacDougall").[1] Mr. Johnson alleges that these Defendants violated his Eighth Amendment rights by failing to protect him from an inmate attack.

For the following reasons, Mr. Johnson may pursue damages from all eight Defendants in their individual capacities on his Eighth Amendment deliberate indifference claim.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Mr. Johnson is allegedly a former "Blood" gang member previously housed in the SRG unit[2] at MacDougall.[3] ECF No. 1 at 5. According to Mr. Johnson, the "[B]loods want [him] dead." *Id.* Despite this, prison officials allegedly involuntarily removed Mr. Johnson from protective custody at MacDougall. *Id.* Mr. Johnson allegedly has been trying to get back into

---

[1] Mr. Johnson lists all eight defendants as Doe defendants. *See* Compl., ECF No. 1 at 1. However, Mr. Johnson explains in his Complaint that he lists the defendants as Doe defendants because he does not know their first names. *Id.* at 7. Mr. Johnson describes each Doe defendant by last name in the "cause of action" section of his Complaint. *See id.* The Court thus uses the last names provided by Mr. Johnson to identify the defendants.

[2] "SRG" is an acronym for Security Risk Group. *Mitchell v. Washington*, No. 3:24-CV-864 (VAB), 2024 WL 5010487, at *1 n.4 (D. Conn. Dec. 6, 2024). "[T]he Security Risk Group/Gang Management Unit is responsible for proactively collecting, evaluating and disseminating security related gang intelligence on the 13 designated Security Risk Groups that exist among the offender population." *Id.* (quotation marks omitted).

[3] Mr. Johnson has since been transferred to Corrigan-Radgowski Correctional Center. *See* ECF No. 1 at 1-2 (envelope listing Mr. Johnson's Corrigan return address).

protective custody since August 1, 2024, because he did not feel safe in the general population.
*Id.*

Mr. Johnson allegedly submitted informal resolution forms to "all the defendants" telling
them he was in danger, people wanted to kill him, and he wanted to return to protective custody.
*Id.* at 5–6. After receiving no response, Mr. Johnson allegedly filed a grievance. *Id.* at 5. After
receiving no response to his grievance, Mr. Johnson allegedly filed an appeal. *Id.*

Lieutenant Suarez and Correctional Officer Zezima allegedly issued Mr. Johnson
disciplinary reports for refusing housing when Mr. Johnson alerted them to his safety concerns.
*Id.* at 6. When Mr. Johnson allegedly told Captain Betances that he did not feel safe, Captain
Betances allegedly told him to "go back to the block or [Mr. Johnson] would keep catching
'D.R.'s' (disciplinary reports)." *Id*. Captain Wilson allegedly told Mr. Johnson "the same exact
thing." *Id.* When Mr. Johnson allegedly told Captain Wilson and Lieutenant Suarez that his
cellmate, Maureace Fussell, "smacked him" on October 13, 2024, Lieutenant Suarez allegedly
issued Mr. Johnson a disciplinary report for refusing housing, and Mr. Johnson was placed in the
restrictive housing unit ("RHU") with a cellmate. *Id.* at 6. Once in the RHU, Correctional
Officers Jacovino and Rivera allegedly issued Mr. Johnson disciplinary reports for refusing a
cellmate. *Id.*

Mr. Johnson's cellmate, Giovanni Nelson, allegedly assaulted Mr. Johnson with a
television on November 21, 2024. *Id.* Mr. Johnson allegedly was badly hurt. *Id.* He allegedly
sustained a broken nose, a cracked tooth, a gash in his head, and a dislocated thumb. *Id.* Mr.
Johnson allegedly was rushed to UConn Hospital for treatment. *Id.* Correctional Officer
Matthews allegedly issued Mr. Johnson a disciplinary ticket for fighting with Mr. Nelson. *Id.*

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.  DISCUSSION

The Court construes Mr. Johnson's Complaint as alleging a deliberate indifference to safety claim under the Eighth Amendment.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). However, "not every injury suffered by one prisoner from another prisoner establishes constitutional liability on the part of the prison official." *Rivera v. Hackett*, No. 3:18-CV-969 (MPS), 2018 WL 3489587, at *2 (D. Conn. July 18, 2018) (citing

4

*Farmer*, 511 U.S. at 834). Rather, a prison official violates a prisoner's Eighth Amendment

protection against cruel and unusual punishment only when two requirements are met. *Id.*

First, the plaintiff must prove that the deprivation was "objectively, sufficiently

serious[.]" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). If the claim is based on the

defendants' failure to prevent harm, the plaintiff must prove that he is "incarcerated under

conditions posing a substantial risk of serious harm." *Id.* There is no "bright line test" to

determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis

v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers

the risk that the prisoner complains of to be so grave that it violates contemporary standards of

decency to expose *anyone* unwillingly to such a risk," i.e., "the prisoner must show that the risk

of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*,

509 U.S. 25, 36 (1993) (emphasis in original).

In this context, "[a] plaintiff may show a substantial risk of harm from a specific

assailant, or a more general risk of harm due to the conditions at the time of the attack." *Hurst v.

Perez*, No. 15 CV 4703 (VB), 2017 WL 187532, at *2 (S.D.N.Y. Jan. 13, 2017). A plaintiff

"need not show he was 'especially likely to be assaulted by the specific prisoner who eventually

committed the assault.'" *Id.* (quoting *Farmer*, 511 U.S. at 843). And "a substantial risk of harm

can exist for purposes of deliberate indifference, regardless of whether a direct threat or attack

actually occurs." *Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010).

Secondly, the plaintiff must prove that the prison official acted with a "sufficiently

culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03). This

requirement is based on the principle that "only the unnecessary and wanton infliction of pain

implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). The prison official

must have disregarded an excessive risk to the prisoner's health or safety. *See id.* at 837.

Whether an official had knowledge of a substantial risk of harm is a question of fact "subject to

demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

"In cases involving the failure to prevent an attack from another inmate, a prisoner may

prove deliberate indifference by showing that the official had actual knowledge of a

'longstanding, pervasive, well-documented, or expressly noted' substantial risk of inmate

attacks.'" *Nieman v. Cheney*, No. 3:24-CV-01366 (KAD), 2024 WL 4880710, at *3 (D. Conn.

Nov. 25, 2024) (emphasis omitted) (quoting *Farmer*, 511 U.S. at 842–43). This requirement may

be satisfied if "the prisoner alleges that he informed correctional officials about a specific fear of

assault prior to being assaulted," so long as the "information provided to correctional officials

[is] . . . sufficiently detailed so as to establish that the correctional officials were sufficiently

aware of the risk of harm at issue." *Pagan v. Colon*, No. 3:22-CV-00001 (KAD), 2022 WL

475176, at *4 (D. Conn. Feb. 16, 2022). A prison official who ignores a prisoner's "specific,

repeated, and urgent expressions of fear for his safety" is "subjective[ly] aware[ ] of, and

deliberately indifferent to" a substantial risk of serious harm. *See Morgan v. Dzurenda*, 956 F.3d

84, 90 (2d Cir. 2020).

Mr. Johnson's allegations, taken as true, satisfy both requirements. As to the first

requirement, Mr. Johnson's informal resolution forms telling Defendants that he was in danger,

people wanted to kill him, and he wanted to return to protective custody, ECF No. 1 at 5–6,

combined with his reports to Captain Wilson and Lieutenant Suarez that Mr. Johnson's then-

cellmate, Maureace Fussell, "smacked him" on October 13, 2024, *id.* at 6, show a "general risk

of harm due to the conditions at the time of the attack." *Hurst*, *supra*, at *2. *See*, *e.g.*, *Douglas v.

Annuci*, No. 14-CV-6018 CJS, 2017 WL 5159194, at *6 (W.D.N.Y. Nov. 7, 2017) (finding that

6

plaintiff plausibly pleaded a substantial risk of serious harm where the complaint alleged that there was "an active 'contract' on his life by the Bloods gang, and that he has already been slashed by Bloods gang members on five occasions"). As a result, Mr. Johnson's allegations meet the first requirement.

As to the second requirement, Mr. Johnson's informal resolution forms, alerting Defendants of physical threats, and his desire to return to protective custody, ECF No. 1 at 5–6, these were "specific, repeated, and urgent expressions of fear for [his] safety." *Morgan*, 956 F.3d at 90. Because prison officials allegedly ignored these expressions, Mr. Johnson has alleged sufficient facts to show prison officials were "subjective[ly] aware[ ] of, and deliberately indifferent to" a substantial risk of serious harm. *Id.* As a result, Mr. Johnson has alleged sufficient facts to also satisfy the second requirement of his deliberate indifference claim. *See id.* (concluding that "Inmate Request Forms" submitted to prison officials containing "detailed and explicit" information regarding threats from another inmate "raised a question of material fact as to whether 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past[.]'" (quoting *Farmer*, 511 U.S. at 842–43)).

Accordingly, because Mr. Johnson has alleged sufficient facts, at this early stage, satisfying both requirements of a deliberate indifference to safety claim under the Eighth Amendment, this claim may proceed. *See*, *e.g.*, *Davies v. Hickley*, No. 3:20-CV-00940 (VAB), 2021 WL 2400276, at *12 (D. Conn. June 11, 2021) (advancing failure to protect claim where prisoner received "numerous threats of physical harm" from gang members, reported those threats to a prison official, but the prison official refused to do anything "until something happened to [the prisoner]").

Mr. Johnson seeks damages from Defendants in their official and individual capacities. *See* ECF No. 1 at 1, 8. But any claims against Defendants in their official capacities must be dismissed. The Eleventh Amendment prohibits an award of monetary damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity.") (internal citations omitted). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."), and Mr. Johnson alleges no facts suggesting that the state has waived immunity in this case. Thus, Mr. Johnson cannot receive damages from Defendants in their official capacities.

Accordingly, any claim for damages against Defendants their official capacities will be dismissed under 28 U.S.C. § 1915A(b)(2).

## ORDERS

For the foregoing reasons, Mr. Johnson may seek damages from Commissioner Angel Quiros,[4] Warden Jesus Guadarrama, Captains Betances and Wilson, Lieutenant Suarez, and

---

[4] Mr. Johnson does not name the Commissioner of Corrections in his Complaint, but the Court may take judicial notice of orders from this district, *see Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:20-CV-01393 (KAD), 2022 WL 788507, at *5 (D. Conn. Mar. 15, 2022), identifying Angel Quiros as the Commissioner of Corrections. *See*, *e.g. Jordan v. Quiros*, No. 3:23-CV-254 (VAB), 2024 WL 3219130, at *8 (D. Conn. June 28, 2024).

officers Zezima, Jacovino, Rivera, and Matthews in their individual capacities on his Eighth Amendment deliberate indifference claim.

All other claims are **DISMISSED**.

The Court enters the following orders:

**(1) The Clerk of Court shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for Commissioner Angel Quiros, Warden Jesus Guadarrama, Captains Betances and Wilson, Lieutenant Suarez, and officers Zezima, Jacovino, Rivera, and Matthews, mail a waiver of service of process request packet containing the Complaint and this Order to them at their addresses by **April 18, 2025**, and report to the Court on the status of the waiver request by **May 2, 2025**. If Defendants fail to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service on Defendants in their individual capacities and the Defendants shall be required to pay the cost of such service.

**(2) The Clerk of Court shall** send Mr. Johnson a copy of this Order.

**(3) The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

**(4)** Defendants shall file their response to the Complaint, either an Answer or a motion to dismiss, by **June 27, 2025**. If Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. Defendants also may include all additional defenses permitted by the Federal Rules.

**(5)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 31, 2025**. Discovery requests need not be filed with the court.

**(6)** All motions for summary judgment shall be filed by **December 5, 2025**.

(7) Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Mr. Johnson changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Johnson must give notice of a new address even if he is incarcerated. Mr. Johnson should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Johnson has more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Johnson should also notify Defendants or the attorney for Defendants of his new address.

(9) Mr. Johnson shall utilize the Prisoner E-filing Program when filing documents with the court. Mr. Johnson is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(10) The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

**SO ORDERED** at New Haven, Connecticut, this 28th day of March, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE